IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GREEN BANK, NATIONAL ASSOCIATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| RG OPPORTUNITIES I, L.P., an Ohio limited partnership; and NEW CITY ADVISORS, LLC, a Delaware limited liability company | § § § § § | |
| Defendants. | § | |

## INTERPLEADER COMPLAINT

### A.  NATURE OF ACTION

1. This is an interpleader action pursuant to Federal Rule of Civil Procedure 22 to determine the proper owner of $5,250,320.55 (the "Disputed Funds") currently held in a deposit escrow account at Green Bank, National Association, account number ******9990 (the "Escrow Account").

### B.  PARTIES

2. Green Bank, National Association ("Green Bank") is a national banking association that has its principal place of business in Houston, Texas.

3. RG Opportunities I, L.P. ("RG Opportunities") is an Ohio limited partnership that has its principal place of business in Cincinnati, Ohio.

4. New City Advisors ("New City") is a Delaware limited liability company that has its principal place of business in Campbell, California.

### C.  JURISDICTION

5. Jurisdiction is proper under 28 U.S.C. § 1332, as plaintiff Green Bank is not a citizen of the same State as any defendant, and the amount of the Disputed Funds exceeds $75,000.

### D.   VENUE

6. Venue is proper in this federal district under 28 U.S.C. § 1391 because the Disputed Funds are situated in Houston, Harris County, Texas, which is located in this Court's judicial district.

### E.   FACTS SUPPORTING INTERPLEADER

7. Green Bank holds the Disputed Funds in the Escrow Account pursuant to a Subscription Escrow Agreement dated effective as of September 14, 2016 (the "Escrow Agreement") by and among RG Opportunities, New City as the Subscriber Representative, Green Bank as the Escrow Agent and NESF Escrow Services Corp., a Delaware corporation and wholly-owned subsidiary of NES Financial Corp. ("NES"), as the Escrow Administrator. A true and correct copy of the Escrow Agreement is attached hereto as **Exhibit "A"**.

8. NES is in the business of providing administrative services to business ventures designed to help individual investors who are not citizens or residents of the United States qualify to apply for EB-5 immigrant investor visas. In its role as Escrow Administrator, NES acted as a liaison between RG Opportunities and New City on the one hand, and Green Bank on the other hand. NES has not been made a defendant to this action in interpleader because it is not asserting any claim to the Disputed Funds. Plaintiff is sending a copy of the Complaint to NESF Escrow Services Corp. to provide notice of the Interpleader.

9. The Disputed Funds were the proceeds of a private offering (the "Offering") of limited partnership interests in RG Opportunities to raise funds from EB-5 investors for a new business venture. In connection with the Offering, RG Opportunities provided prospective EB-5 investors

a private placement memorandum (the "PPM") providing various disclosures relating to, among other things, the business venture, the use of the funds to be raised in the Offering, and the requirements for the EB-5 immigrant investor visa program in the United States.  Investors who subscribed for limited partnership interests in RG Opportunities pursuant to the Offering, all of whom Green Bank believes to be nationals of China ("Investors"), submitted funds to purchase such limited partnership interests.  Those funds were placed in the Escrow Account and, less distributions previously made under the Escrow Agreement, constitute the Disputed Funds.

10. The Escrow Agreement sets forth certain prerequisites for the ability of RG Opportunities to obtain a disbursement of funds from the Escrow Account at certain times for use in its business venture.  Such prerequisites were negotiated among NES, RG Opportunities and New City, and accepted by Green Bank, with the intended purpose of enabling RG Opportunities to use portions of the funds raised in the Offering to enable development of the business venture in a manner consistent with EB-5 immigrant visa program requirements as applicable to the Investors.  Among other requirements in the Escrow Agreement, a request for disbursement of funds from the Escrow Account must be signed by both RG Opportunities and New City.  The Escrow Agreement also provided for disbursement of an Investor's funds back to the Investor in the event of written notice from RG Opportunities that the Investor had withdrawn his or her subscription agreement.

11. On or about December 18, 2017, NES informed Green Bank that it had received, in its role as escrow administrator and liaison between Green Bank and the other Escrow Agreement parties, a request for disbursement of funds from the Escrow Account purportedly signed by RG Opportunities and New City (the "Disbursement Request").  NES pointed out that the person signing the Disbursement Request on behalf of RG Opportunities, an individual by the name of

Yuqi "Richard" Lin (who is also one of the Investors), was not one of the persons authorized to sign on behalf of RG Opportunities according to a certificate of incumbency previously provided to NES and Green Bank. According to the certificate of incumbency, the two persons authorized to sign on behalf of RG Opportunities were Gary Chan and Mason Chen, who were the principals of the general partner of RG Opportunities, RG MGMT, LLC.  NES and Green Bank believed Gary Chan and Mason Chen to be the ultimate owners of RG MGMT, LLC, each owning their respective interests through other limited liability companies.

12. After NES raised this issue with the Subscriber Representative, the Subscriber Representative replied that Gary Chan and Mason Chen had transferred their interests in RG MGMT, LLC to Richard Lin.  In support of this, New City provided NES a copy of an agreement purporting to transfer such interests.  This agreement was signed on behalf of both transferors by Terry Chan, another individual involved with RG MGMT, LLC who NES and Green Bank understood to be the brother of Gary Chan.  However, no evidence of the authority of Terry Chan to execute this agreement on behalf of Gary Chan or Mason Chen or their respective LLCs was provided.

13. When NES inquired about Terry Chan's authority to act on behalf of Gary Chan and Mason Chen in the supposed transfer of RG MGMT, LLC's ownership to Richard Lin, the Subscriber Representative then presented NES with documents purporting to show the Investors voted to remove RG MGMT, LLC as general partner of RG Opportunities and to name an entity controlled by Richard Lin as the new general partner.

14. Shortly after this time, NES was informed that Richard Lin's entity, as the new general partner, had retained new legal counsel for RG Opportunities, John Tang of the DHH

Washington Law Office of the Beijing DHH Law Firm. Mr. Tang told NES that because RG MGMT, LLC had been replaced as general partner by Richard Lin's entity, the issue concerning the authority of Terry Chan to convey Gary Chan's and Mason Chen's interests in RG MGMT, LLC to Richard Lin was now moot.

15. Upon review of the documentation purporting to show the Investors' removal of RG MGMT, LLC and appointment of Richard Lin's entity as RG Opportunities' general partner, NES pointed out to the Subscriber Representative that the copy of the executed limited partnership agreement of RG Opportunities previously provided to NES and Green Bank (and which comprised part of the disclosure materials for the Offering) did not provide the Investors with authority to remove or replace the general partner. This copy of the limited partnership agreement, dated July 1, 2014, provided that the general partner could be removed only upon its resignation, or upon the entry of a court order declaring that the general partner had engaged in fraud or criminal misconduct with respect to the partnership or its duties as general partner.

16. The Subscriber Representative then provided NES with a different executed version of the partnership agreement for RG Opportunities. This version, dated July 7, 2014, contained a provision giving the Investors the authority to remove and replace the general partner with a 75% vote. The Subscriber Representative, RG Opportunities, and RG Opportunities' new counsel Mr. Tang never offered an explanation for the existence of the two different signed versions of the limited partnership agreement, but insisted that the version enabling the Investors to remove the general partner was the operative one.

17. After NES shared this information and documentation to Green Bank, Green Bank, NES and their respective counsel concluded there were uncertainties regarding (i) which version of

the limited partnership of RG Opportunities was in force and effect, (ii) the validity of the purported transfer of ownership of general partner RG MGMT, LLC from Gary Chan's and Mason Chen's ultimate ownership to Richard Lin, and (iii) the validity of the purported removal and replacement of RG MGMT, LLC as the general partner of RG Opportunities.  With Green Bank's input and concurrence, NES asked that the Subscriber Representative and RG Opportunities provide additional documentation, including a legal opinion or supporting letter from a U.S. lawyer confirming the validity of the various documents and the legitimacy of the corporate actions taken regarding RG Opportunities and its general partner.

18.  NES also requested that it be authorized to contact or receive communication from one of the individuals named in the certificate of incumbency for RG Opportunities (Gary Chan or Mason Chen) and obtain his acknowledgment that RG MGMT, LLC had been removed as general partner and/or that neither individual was any longer involved in the operation of RG Opportunities.  The Subscriber Representative and RG Opportunities objected to NES having any such communication with Gary Chan or Mason Chen, and insisted that neither those individuals, nor Terry Chan, had current authority to act on behalf of RG Opportunities.

19.  In addition to the uncertainties relating to who was authorized to act on behalf of RG Opportunities, there were additional circumstances that gave NES and Green Bank cause for concern about complying with the Disbursement Request.  It came to the attention of NES and Green Bank, including by means of a communication to NES from RG Opportunities' new counsel Mr. Tang, that there were allegations of potential fraud, misrepresentation and conversion on the part of RG MGMT, LLC in its role as the general partner of RG Opportunities, and specifically on the part of Gary Chan and Terry Chan.  Among other things, these allegations involved the supposed misuse by the Chans and/or RG MGMT, LLC of funds that had

previously been disbursed from the Escrow Account. New City and RG Opportunities stated that this misuse of funds would jeopardize the ability of all the Investors to obtain their EB-5 visas, because the funds had not been used for their intended purpose in RG Opportunities' business venture and thus did not conform to the legal requirements of the EB-5 visa program.

20. In the views of NES and Green Bank, these allegations of fraud made the urgency of New City and RG Opportunities in asking for an additional disbursement of funds pursuant to the Disbursement Request seem puzzling. New City and RG Opportunities insisted that disbursement of additional funds was imperative to continue RG Opportunities' business and thereby preserve the Investors' chances of obtaining EB-5 visas. However, this seemed inconsistent with the statements of New City and RG Opportunities that the alleged fraud of RG MGMT, LLC and/or Gary Chan and Terry Chan had already jeopardized the Investor's ability to obtain visas; a release of additional funds would seemingly further any damages to Investors, as they would have even more money at risk in the business venture yet no opportunity to obtain visas.

21. It also came to the attention of NES and Green Bank that certain aspects of the Offering may not have been conducted in a manner consistent with the disclosures in the PPM, including statements in the PPM that limited partnership interests in RG Opportunities would be offered and sold in the Offering by means of a registered broker-dealer, when in fact no broker-dealer was used in the Offering.

22. In the Escrow Agreement, RG Opportunities represented and warranted to Green Bank that the Offering would comply in all respects with applicable federal and state securities laws

and that RG Opportunities had obtained and acted upon the advice of legal counsel with respect to such compliance with applicable federal and state securities laws.

23. In addition, a concern arose that RG Opportunities may no longer have been in compliance with a provision of the Escrow Agreement requiring that it obtain a payment guaranty from a limited liability company affiliated with Gary Chan.  The purpose of the guaranty was to provide for the refund of an Investor's subscription in the event the Investor's EB-5 visa petition was denied and there were insufficient funds in the Escrow Account for the refund.  Certain allegations regarding the financial stability of this limited liability company, which called into question whether it had the ability to refund Investor's subscription under the payment guaranty, had come to the attention of NES and Green Bank.

24. Another concern that NES and Green Bank had about the Disbursement Request was that it asked for disbursement of amounts that were different than those prescribed by the Escrow Agreement for the applicable circumstances.  The parties subsequently communicated about the need to amend the Escrow Agreement if funds were to be disbursed in such different amounts.

25. In an effort to address some of their concerns regarding the foregoing circumstances, NES and counsel for Green Bank requested that RG Opportunities' counsel provide a legal opinion addressing compliance of the Offering with applicable securities laws (in addition to the legal opinion previously requested regarding the operative partnership agreement of RG Opportunities and that validity of the purported replacement and removal of RG MGMT, LLC as general partner).

26. Mr. Tang, as counsel for RG Opportunities, eventually delivered a legal opinion to NES regarding the partnership agreement and general partner removal issues that NES and Green

Bank found to be reasonably satisfactory in substance. However, while the opinion limited itself to Ohio law (which is not unexpected because RG Opportunities is an Ohio limited partnership), Mr. Tang, who appears to be based in Washington, D.C. and represented himself as a member of the District of Columbia bar, did not confirm if he was licensed in Ohio or how he was otherwise qualified to opine on Ohio law.

27. The legal opinion ultimately delivered by Mr. Tang as to compliance of the Offering with applicable securities laws did not alleviate the concerns of NES and Green Bank regarding those issues. Moreover, this legal opinion also was limited to Ohio law, which left unaddressed the framework of federal securities laws that (in addition to applicable state law) govern the offer and sale of securities such as those in the Offering.

28. In light of the ongoing concerns about the compliance of the Offering with securities laws and possible allegations of fraud, misrepresentation and conversion on the part of the former general partner of RG Opportunities that had been brought to their attention, NES and Green Bank proposed that RG Opportunities, New City, and all the Investors execute a release, which would make reference to these and other issues (including the removal and replacement of RG Opportunities' general partner) and that would indemnify and hold NES and Green Bank harmless in connection with Green Bank's disbursement of funds pursuant to the Disbursement Request (the "Release"). (As noted below, the Escrow Agreement also contains broad release of liability and indemnity provisions from RG Opportunities and New City in favor of Green Bank). The proposed Release was drafted jointly by Green Bank's counsel and NES' internal counsel and presented to RG Opportunities and New City. In ensuing communications among the parties, New City expressed objections to requiring the signatures of the Investors on the Release, but NES and Green Bank ultimately stood firm on this requirement. In the view of NES

and Green Bank, if anyone had claims regarding potential securities law violations and/or fraud, misrepresentation and conversion on the part of RG Opportunities' original general partner and/or Gary Chan and Mason Chen, it would be primarily the Investors; NES and Green Bank desired not to be brought into any such claims as a result of agreeing to, and in the case of Green Bank acting upon, the Disbursement Request.

29. Based on communications from Mr. Tang to NES and Green Bank's counsel, Mr. Tang appeared to be engaged in efforts to obtain signatures from the Investors on the Release. However, he ultimately indicated that at least two of the Investors would not be signing the Release.

30. During the course of communications among the parties in January 2018 regarding the legal opinions and the Release, Ms. Lili Wang, the principal officer of New City, began making numerous telephone calls to NES, Green Bank, and Green Bank's counsel.  She also communicated with NES by email.  Ms. Wang was urging that Green Bank and NES find satisfactory the documentation presented by RG Opportunities and the legal opinions from its counsel, and that Green Bank disburse the funds pursuant to the Disbursement Request as soon as possible.  In ensuing days Ms. Wang's communications became more aggressive, and around this time NES and Green Bank each received by regular mail a letter purporting to be from RG Opportunities' counsel, Mr. Tang.  The letter was combative in nature and it demanded that Green Bank immediately disburse the funds pursuant to the Disbursement Request.  NES and Green Bank noticed that, curiously, the letter was dated January 19, 2018 and demanded the disbursement to occur that same day, but the letter was sent to NES and Green Bank only by regular mail, not by email or other prompt method of delivery, and did not reach NES and Green Bank until January 23 and 24, 2018, respectively.  NES and Green Bank believed it would be

uncharacteristic of an experienced attorney to send a letter demanding funds on a same-day basis but then send the letter in such a way that it would not reach the recipients until days later.

31. NES and Green Bank also noticed a number of other unusual aspects of the letter that they believe called into question whether RG Opportunities' counsel actually had been its author and sender, including that: (i) although appearing to be printed on the letterhead of Mr. Tang's firm, the DHH Washington Law Office, the letterhead was not in color, as was the case with other letters the counsel had sent the parties, and appeared to be a rough facsimile of the letterhead, (ii) the letter contained a grainy image of Mr. Tang's signature but not an original signature, (iii) the mailing label on the envelope indicated that it was from "John Tang, Esq." but did not contain the name of DHH Washington Law Office, as NES and Green Bank would have ordinarily expected, and (iv) the envelope indicated that it was mailed from zip code 95008, which is a zip code for Campbell, California, where New City is headquartered and where NES and Green Bank believe that Ms. Wang resides. Moreover, the combative tone of the letter conflicted with the cooperative and deferential approach that Mr. Tang seemed to take in an email to NES on the day after NES received the letter, regarding efforts to obtain signatures of the Investors on the Release. These factors led NES and Green Bank to suspect that the author and sender of the letter was not John Tang, but rather Lili Wang. At this point, it appeared to Green Bank and NES that Ms. Wang, on behalf of New City, and Mr. Tang, on behalf of RG Opportunities, might be working at cross purposes and/or with conflicting objectives.

32. This possible divergence of interests between New City and RG Opportunities also called to Green Bank's recollection the seeming inconsistency between the stated reasons for the urgency of disbursing additional funds from the Escrow Account, i.e., to continue RG Opportunities' business and thereby preserve the ability of the investors to obtain visas, and the

claim that the alleged fraud of RG MGMT, LLC and/or Gary Chan and Terry Chan, had already jeopardized the Investors' qualifications for EB-5 visas.

33. Adding to the aura of suspicion surrounding the letter purported to be from Mr. Tang, on the same day of the letter's receipt, an operations employee of Green Bank fielded a call from an individual claiming to be Gary Chan, requesting online access to view information about the Escrow Account. The Green Bank employee informed the caller that online access had not been set up for the Escrow Account, only for an operating account of RG Opportunities (which had never been funded) and that only Terry Chan was listed on Green Bank's records as having authorization to use that online access. The caller hung up, and immediately another person called from the same telephone number who claimed to be Terry Chan and made the same request for online access to the Escrow Account. The Green Bank employee did not assist the caller in obtaining online access but referred the matter internally to the responsible Green Bank officer, who directed operations personnel that in light of these unusual circumstances, online access to the Escrow Account should not be granted to any person.

34. On February 7, 2018, Green Bank and NES received a copy of a letter of the same date from Gary Chan's counsel to Lili Wang of New City. In the view of Green Bank, this letter raised new questions regarding who has authority to act on behalf of RG Opportunities and to claim the Disputed Funds. The letter stated that Gary Chan had received multiple demands for payment for capital improvements relating to RG Opportunities' business, that funds from the Escrow Account should be released to satisfy these claims, and that RG Opportunities and New City should authorize Green Bank to release funds accordingly. The letter continues, "Please consider this correspondence as the general partner's request that New City agree to executed authorizations for the release of escrowed funds." In this manner, counsel for Gary Chan

appeared to take the position that the original general partner controlled by Mr. Chan and Mason Chen, RG MGMT, LLC, was still the general partner of RG Opportunities and had authority to act on behalf of the partnership, contrary to the previous assertions of New City and Mr. Tang.

35. The letter from Gary Chan's counsel also indicated that Mr. Chan had made contact "with a firm examining potential litigation strategies" and stated that if this matter is not expeditiously concluded, federal civil actions may be filed against New City and all of the Investors, including but not limited to federal statutory violations of the EB-5 visa program, breach of contract, tortious interference with contract, fraud in the inducement, defamation per se, intentional infliction of emotional distress, civil assault, and "allied offenses".

36. An email reply to the letter from Lili Wang of New City, on which Green Bank and NES were copied, stated, "As subscriber representative, NCA will under no circumstances agree to release any portion of the RG Opportunities I, LP EB-5 Investor funds to the Chans. Based on NCA's best knowledge, Gary and Terry Chan no longer have any part in the project and therefore no longer have any control over the funds in escrow."

37. The letter from Gary Chan's counsel and Ms. Wang's reply further highlight the existence of a disagreement among the Defendants and others regarding which party(ies) are authorized to act on behalf of RG Opportunities and to direct and receive disbursements of the Disputed Funds from the Escrow Account. Moreover, if Gary Chan was continuing to claim authority to act on behalf of RG Opportunities, as the letter seemed to imply, his counsel's threat of litigation against New City and the Investors appeared further to underscore a divergence of interests between or among RG Opportunities, New City and the Investors.

38. Based on all of the foregoing, Green Bank has reasonable grounds to anticipate rival claims to the Disputed Funds by the Defendants or others. Green Bank is not in a position to resolve such claims, which expose Green Bank to multiple claims or liabilities.

39. Green Bank is a mere stakeholder and has no claim to the Disputed Funds.

40. Green Bank hereby tenders to this Court, for retention in the registry until further order of the Court, the sum of $5,250,320.55 constituting the Disputed Funds.

41. Having brought this matter and the Defendants before the Court, Green Bank requests the Court to order reimbursement from the Disputed Funds of Green Bank's reasonable fees and costs. In the Fifth Circuit is well-settled that a district court has authority to award reasonable costs and attorney's fees to the disinterested stakeholder in rule interpleader actions. *Gen. Elec. Capital Assur. v. Van Norman*, 209 F. Supp. 2d 668, 672 (S.D. Tex. 2002). *See also Gulf Oil Corp. v. Olivier,* 412 F.2d 938, 946 (5th Cir. 1969) (costs and attorneys' fees are ordinarily awarded to the disinterested stakeholder in an interpleader proceeding).

42. Green Bank's claim for its costs and attorneys' fees is reinforced by Section 6(d) of the Escrow Agreement, which provides that in the event any controversy arises under or in connection with the Escrow Agreement or the Disputed Funds, GP Opportunities must pay Green Bank reasonable compensation for its extraordinary services and reimburse Green Bank for all costs and expenses, including legal fees and expenses, associated with such controversy.

43. Section 6(c) of the Escrow Agreement provides that in the event of any disagreement resulting in adverse claims or demands being made in connection with any funds covered by the Escrow Agreement, Green Bank has the right to tender the funds into the registry of any court of competent jurisdiction and may take such other legal action as may be appropriate or necessary,

in the opinion of Green Bank or its legal counsel. Section 6(c) further provides Green Bank will not be liable to any parties for failing to comply with the conflicting or adverse demands of such parties and that upon such tender of the funds into the registry of the court, Green Bank shall be discharged from all further duties under the Escrow Agreement.

44. Sections 6(a) and 6(c) of the Escrow Agreement contain broad release of liability clauses in favor of Green Bank as escrow agent, including among others: that Green Bank will not be liable to anyone for any damages, losses or expenses which may be incurred as a result of Green Bank's acting or failing to act (other than gross negligence or willful misconduct adjudicated to be the primary cause of such damages); that Green Bank will not incur any liability with respect to any action taken or omitted to be taken in good faith upon advice of legal counsel; and that in the event of any disagreement involving adverse claims or demands being made in connection with any funds in the Escrow Account, Green Bank may refuse to comply with the demands of any parties and will not be liable to such parties for so doing.

45. Section 6(g) of the Escrow Agreement also obligates RG Opportunities and New City jointly and severally to indemnify and hold harmless Green Bank, its affiliates, and their respective officers, directors, employees and agents from any and all claims asserted directly or indirectly as a result of or in connection with Green Bank's serving as escrow agent under the Escrow Agreement.

WHEREFORE, the premises considered, Green Bank respectfully prays that this Court:

(1) Temporarily restrain and thereafter permanently enjoin the Defendants from instituting any action against Green Bank or its agents for the recovery of the Disputed Funds in the Disputed Account or any part thereof;

(2)   Order the Defendants to plead all their claims to the Disputed Funds in this action;

(3)   Dismiss Green Bank from this proceeding and discharge it from any future liability to the Defendants for any claim to the Escrow Account or the Disputed Funds;

(4)   Award Green Bank its reasonable attorneys' fees and costs incurred herein, out of the funds paid to the registry of this Court; and

(5)   Enter such other and different relief as the Court deems just and proper.

Respectfully submitted,

LEYH, PAYNE & MALLIA, PLLC

By: /s/ Steven A. Leyh
      Steven A. Leyh
      Attorney-in-Charge
      Texas Bar No. 12318300
      SDOT Bar No. 1120

9545 Katy Freeway, Suite 200
Houston, Texas 77024
(713) 785-0881 (Telephone)
(713) 784-0338 (Facsimile)
sleyh@lpmfirm.com

**Counsel for Green Bank, National Association**