# SUBSCRIPTION ESCROW AGREEMENT

This Subscription Escrow Agreement (the "Agreement") effective as of September 14, 2016, by and among RG Opportunities I, L.P., an Ohio limited partnership ("LP"), New City Advisors LLC, a Delaware limited liability company (the "Subscriber Representative"), NESF Escrow Services Corp., a Delaware corporation and wholly owned subsidiary of NES Financial Corp. ("Escrow Administrator") and Green Bank, N.A., a national banking association (the "Escrow Agent") (each a "Party" and collectively the "Parties").

## W I T N E S S E T H:

**WHEREAS,** the LP, the Subscriber Representative and the Escrow Administrator previously entered into an Amended and Restated Subscription and Administrative Fee Escrow Agreement with Signature Bank dated March 11, 2015 (the Former Escrow Agreement"). Signature Bank has resigned under the terms of such agreement. Escrow Agent is hereby entering into this Escrow Agreement as successor to Signature Bank.

**WHEREAS,** the LP proposes to offer for sale (the "Offering") individual units of interest in the LP (the "Interests"), at a subscription purchase price of Five Hundred Thousand Dollars ($500,000.00) per Interest ("Subscription Proceeds"), payable in cash by each investor (the "Subscribers") pursuant to subscription agreements ("Subscription Agreements"); and

**WHEREAS,** the Interests in the LP are proposed to be offered for sale to the Subscribers under the terms of the EB-5 visa program administered by the U.S. Citizenship and Immigration Service ("USCIS"), an agency of the United States government;

**NOW THEREFORE,** in consideration of the mutual covenants and agreements contained herein and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1.  Deposits in Escrow.

    (a)   Contemporaneously with the Parties' execution and delivery of this Agreement, (i) Signature Bank shall transfer and convey to Escrow Agent, in its capacity as successor escrow agent, all property held under the Former Escrow Agreement, including all funds escrowed thereunder, and (ii) in connection with such transfer and conveyance, Signature Bank shall be released and discharged from all duties and obligations under the Former Escrow Agreement. Escrow Agent shall have no responsibility for the property held under the Former Escrow Agreement, until [a] the escrowed funds are actually received by Escrow Agent, cleared through customary banking channels and constitute collected and available funds as determined in accordance with Escrow Agent's then current availability schedule; and [b] Escrow Agent shall have received, in a form acceptable to escrow Agent, schedules disclosing the name, address and Tax Identification Number (if applicable) of each of the Subscribers and such other information as will enable the Escrow Agent to verify the identity of the Subscribers and attribute to each Subscriber the escrowed funds received by Escrow Agent and any other property held under the Former Escrow Agreement.

## EXHIBIT "A"

(b)     The LP shall deposit or cause to be deposited with the Escrow Agent, to be held in escrow under the terms of this Agreement, all Subscription Proceeds received from Subscribers.  The Escrow Agent shall have no responsibility for the Subscription Proceeds until such proceeds are actually received, clear through normal banking channels and constitute collected and available funds.  The Escrow Agent shall have no duty to collect or seek to compel payment of any Subscription Proceeds, except to place such proceeds or instruments representing such proceeds for deposit and payment through customary banking channels.   Subscription Proceeds shall be wire transferred by Subscribers to the Escrow Account for RG Opportunities I, L.P..

(c)     The LP shall also secure an agreement of guaranty (the "Payment Guaranty") from Jardin Hill, LLC, an Ohio limited liability company (the "Guarantor"), to provide that in the event any Subscriber's I-526 Petition is denied, for any reason, and funds are not available in the Escrow Account or in the LP's operating account to refund any such denied Subscriber's Subscription Proceeds, the Guarantor under such Payment Guaranty shall make a refund to any such denied Subscriber of his/her Subscription Proceeds without deduction or payment of interest.

(d)     The LP shall deliver to the Escrow Agent, in a form acceptable to the Escrow Agent, schedules disclosing the name, address and Tax Identification Number (as applicable) of each of the Subscribers, and such other information as will enable the Escrow Agent to attribute to a particular Subscriber all Subscription Proceeds received by the Escrow Agent, consistent with the requirements of 12 C.F.R. 330.5 or any successor regulation thereto.

(e)     No interest will be paid on Subscription Proceeds.  The Escrow Agent will invoice the LP annually for its services as Escrow Agent pursuant to the Escrow Agent's Fee Schedule as in effect from time to time, the current version of which is set forth on Exhibit B hereto.

2.     Rejection or Withdrawal of Subscription Agreement.

(a)     Any Subscription Agreement may be rejected by the LP in whole or in part.  The LP shall promptly notify the Escrow Agent in writing in the event of any such rejection.  Upon the receipt of a written notice of rejection pertaining to any Subscription Agreement, the Escrow Agent shall disburse the Subscription Proceeds to the Subscriber signing the rejected Subscription Agreement according to written instructions from the LP and the Subscriber Representative, without deduction or payment of interest; provided such Subscriber's Subscription Proceeds constitute collected and available funds.

(b)     In the event the Escrow Agent receives written notice from the LP that a Subscription Agreement has been withdrawn by a Subscriber, the Escrow Agent shall disburse the Subscription Proceeds to the Subscriber signing the withdrawn Subscription Agreement according to written instructions from the LP and the Subscriber Representative, without deduction or payment of interest; provided such Subscriber's Subscription Proceeds constitute collected and available funds.

3.     Disbursements.

2

(a)     At such time as the Escrow Agent has received (i) notice from the Escrow Administrator that evidence of the Payment Guaranty referenced in Section 1(c) has been provided and (ii) a Written Direction from the LP and the Subscriber Representative stating that a Subscriber has filed his/her I-526 Petition (as evidenced by an I-797C Notice of Action issued by USCIS and indicating the application/petition has been received), the Escrow Agent shall, subject to the receipt of such funds, and further provided that such funds have cleared through normal banking channels, disburse 25% of such Subscriber's Subscription Proceeds ($125,000.00), in accordance with the Written Direction.

(b)     At such time as the Escrow Agent has received a Written Direction from the LP and the Subscriber Representative with certification from the USCIS that a minimum of two (2) Subscribers in the LP have received approval of their I-526 Petitions, the Escrow Agent shall, subject to the receipt of such funds, and further provided that such funds have cleared through normal banking channels, disburse (i) an additional 65% of the Subscription Proceeds ($325,000.00) for each Subscriber who has filed his/her I-526 Petition and had 25% of his/her Subscription Proceeds previously disbursed from the Escrow Account, and (ii) 90% of the Subscription Proceeds ($450,000) for each additional Subscriber who subscribes and files his/her I-526 Petition with the USCIS (as evidenced by an I-797C Notice of Action issued by USCIS and indicating the application/petition has been received), to the account of the LP in accordance with the Written Direction provided by the LP and Subscriber Representative.  The remaining 10% ($50,000.00) of each Subscriber's Subscription Proceeds will be held in a holdback subaccount (the "Subscription Holdback Account") within the Escrow Account.  Funds held in the Subscription Holdback Account shall be disbursed in $50,000.00 increments upon receipt by the Escrow Agent of Written Direction from the LP and Subscriber Representative which shall only be given following LP's receipt of evidence that a Subscriber's I-526 application has been approved.  At such time as the LP and the Subscriber Representative provide to the Escrow Agent Written Direction stating that all Subscribers' Form I-526 applications have been either approved, denied or otherwise processed by the USCIS and all Subscription Proceeds either returned to the Subscriber or disbursed in accordance with the Written Direction provided by the LP and the Subscriber Representative, this Agreement (except as otherwise provided herein) shall terminate.

(c)     In the event the Escrow Agent receives a Written Direction from the LP and the Subscriber Representative that a Subscriber's Form I-526 Petition has been denied (without appeal or after denial of any appeal) by USCIS, the Escrow Agent shall return any portion of such denied Subscriber's Subscription Proceeds that are still in the Escrow Account or the Subscription Holdback Account, to the denied Subscriber identified in such Written Direction, without deduction or payment of interest.  In the event the denied Subscriber's funds have been released from the Escrow Account, as provided in Sections 3(a) and 3(b) herein, and there are insufficient funds available in the LP's general operating account to refund all of the $500,000 Subscription Proceeds to the denied Subscriber, the LP and the Subscriber Representative shall exercise their rights in the Payment Guaranty to ensure prompt repayment of the Subscription Proceeds of any denied Subscriber.  In the event a denied Subscriber is refunded under the terms of the Payment Guaranty, the LP shall use best efforts to substitute the denied Subscriber with the next Subscriber who subscribes, places the $500,000 Subscription Proceeds with the Escrow Agent and files his or her I-526 Petition (the "Substituting Subscriber"), as and when such Substituting Subscriber's I-526 Petition is filed.  Escrow Agent shall have no liability to the LP, Subscriber Representative, Escrow Administrator or any

Subscriber in the event that any or all of the Subscription Proceeds are not returned to a Subscriber for any reason in accordance with the provisions of this Section 3(c).

(d)     Notwithstanding anything to contrary herein, Escrow Agent shall not make any disbursements from the Escrow Account to the LP unless Escrow Agent has received an affidavit from the LP and the Subscriber Representative confirming (i) that the funds requested are only for the purposes of acquisition of real property, capital improvement, permanent improvements or purchase of equipment; and (ii) that the LP has had cash equity contributions equal to or greater than 67% of the amount to be released; and (iii) that at no point will the cumulative released amount be greater than 60% of cumulative total cash injection received by the LP.

(e) Notwithstanding anything to the contrary provided in this Agreement, the Escrow Agent shall rely conclusively and without any further inquiry on the written directions, including but not limited to written directions pertaining to disbursements, furnished to the Escrow Agent by the LP and the Subscriber Representative. The parties to this Agreement acknowledge and agree that the Subscriber Representative is fully authorized to act on behalf of the Subscribers. The Escrow Agent shall have no duty to take notice of any request or direction of any Subscriber, but shall in all cases rely conclusively and without inquiry on the written directions of the Subscriber Representative with respect to all matters pertaining to Subscribers and the individual and collective interests of all Subscribers under this Agreement.

(f)     The Subscriber Representative shall provide a copy of this Agreement to each Subscriber.

4.     Investment of Subscription Proceeds.

The Parties further covenant, warrant and agree that the Escrow Agent shall invest all Subscription Proceeds, at the written direction of the LP, in a commercial demand deposit account.

5.     Escrow Administration.

All taxes in respect of any earnings on the Subscription Proceeds shall be the obligation of the Subscriber to the extent of its pro rata share thereof, which pro rata shares will be in the same proportion of the amounts deposited by each into the Escrow Account. The Subscriber Representative, as agent for the Subscribers and tax owner of record of the Subscription Proceeds, shall furnish the Escrow Agent with a completed Form W-9 for the Subscriber Representative.  The Subscriber Representative and the Subscribers have agreed pursuant to a separate agreement that the Escrow Administrator shall perform the sub-accounting services necessary for maintaining proper ownership records with respect to the Subscription Proceeds and shall issue IRS Form 1099s to the Subscribers with respect to their earnings, if any, on the Subscription Proceeds.  The Escrow Administrator and the Subscriber Representative understand that, if such tax reporting documentation is not so certified to the Escrow Agent, the Escrow Agent may be required by the Internal Revenue Code of 1986, as amended, to withhold a portion of any income, if any, earned on the investment of monies or other property held by the Escrow Agent pursuant to this Agreement.  The Parties shall provide to Escrow Agent such information as Escrow Agent may reasonably require to enable Escrow Agent to comply with its obligations under the USA PATRIOT Act.  Escrow Agent shall not credit any amount of interest

4

or investment proceeds earned on the Subscription Proceeds, or make any payment of all or a portion of the Subscription Proceeds, to any person unless and until such person has provided to Escrow Agent such documents as Escrow Agent may require to enable Escrow Agent to comply with its obligations under such Act.

6.     Duties of Escrow Agent; Indemnification.

(a)     The Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no additional duties or obligations shall be implied hereunder. In performing its duties under this Agreement, or upon the claimed failure to perform any of its duties hereunder, the Escrow Agent shall not be liable to anyone for any damages, losses or expenses which may be incurred as a result of the Escrow Agent's so acting or failing to so act; except to the extent that a court of competent jurisdiction determines that the Escrow Agent's gross negligence or willful misconduct was the primary cause of such damages. Anything in this Escrow Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action. The Escrow Agent shall in no event incur any liability with respect to (i) any action taken or omitted to be taken in good faith upon advice of legal counsel, accountants or other professional advisors, which may be counsel, accountants or other professional advisors, to either Party hereto, given with respect to any question relating to the duties and responsibilities of the Escrow Agent hereunder, or (ii) any action taken or omitted to be taken in reliance upon any instrument delivered to the Escrow Agent and believed by it to be genuine and to have been signed or presented by the proper party or parties. The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such instrument. Further, the Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any agreement or documents (including without limitation the Subscription Agreement and related Private Placement Memorandum) other than this Escrow Agreement.

(b)     The LP warrants to and agrees with the Escrow Agent that there is no security interest in the Subscription Proceeds or any part of the Subscription Proceeds; no financing statement under the Uniform Commercial Code of any jurisdiction is on file in any jurisdiction claiming a security interest in or describing, whether specifically or generally, the Subscription Proceeds or any part of the Subscription Proceeds; and the Escrow Agent shall have no responsibility at any time to ascertain whether or not any security interest exists in the Subscription Proceeds or any part of the Subscription Proceeds or to file any financing statement under the Uniform Commercial Code of any jurisdiction with respect to the Subscription Proceeds or any part thereof.

(c)     As an additional consideration for and as an inducement for the Escrow Agent to serve as escrow agent hereunder, it is understood and agreed that, in the event of any disagreement resulting in adverse claims and demands being made in connection with or for any money or other property involved in or affected by this Agreement, the Escrow Agent shall be entitled, at the option of the Escrow Agent, to refuse to comply with the demands of any parties so long as such disagreement shall continue. In such event, the Escrow Agent may elect not to make any delivery or other disposition of the Subscription Proceeds or any part of such Subscription Proceeds. Anything herein to the contrary notwithstanding, the Escrow Agent shall not be or become liable to such parties or any of them for the failure of the Escrow Agent to

5

comply with the conflicting or adverse demands of such parties.  The Escrow Agent shall be entitled to continue to refrain and refuse to deliver or otherwise dispose of the Subscription Proceeds or any part thereof or to otherwise act hereunder, as stated above, unless and until:

(i)  the rights of such parties have been finally settled or duly and finally adjudicated in a court of competent jurisdiction and the Subscription Proceeds and the Escrow Agent, has received written instructions as to disbursement thereof accompanied by a certified copy of documentation satisfactory to the Escrow Agent evidencing such final settlement or adjudication; or

(ii)  the parties have reached an agreement resolving their differences and have notified the Escrow Agent in writing of such agreement and have provided the Escrow Agent with indemnity satisfactory to the Escrow Agent against any liability, claims or damages resulting from compliance by the Escrow Agent with such agreement.

In the event of a disagreement as described above, the Escrow Agent shall have the right, in addition to the rights described above and at the option of Escrow Agent, to tender into the registry or custody of any court of competent jurisdiction, all money and property comprising the Subscription Proceeds and may take such other legal action as may be appropriate or necessary, in the opinion of Escrow Agent or its legal counsel.  Upon such tender, the Escrow Agent shall be discharged from all further duties under this Agreement; provided, however, that the filing of any such legal proceedings shall not deprive the Escrow Agent of its compensation hereunder earned, or discharge the Escrow Agent of any duties hereunder incurred, prior to such filing.

(d)  The LP agrees that in the event any controversy arises under or in connection with this Agreement or the Subscription Proceeds or the Escrow Agent is made a party to or intervenes in any litigation pertaining to this Agreement or the Subscription Proceeds, to pay to the Escrow Agent reasonable compensation for its extraordinary services and to reimburse the Escrow Agent for all costs and expenses, including legal fees and expenses, associated with such controversy or litigation.

(e)  The Escrow Agent may resign at any time from its obligations under this Agreement by providing written notice to the LP.  Such resignation shall be effective on the date set forth in such written notice, which shall be no earlier than thirty (30) days after such written notice has been given. In the event no successor escrow agent has been appointed on or prior to the date such resignation is to become effective, the Escrow Agent shall be entitled to tender into the custody of any court of competent jurisdiction all assets then held by it hereunder and shall thereupon be relieved of all further duties and obligations under this Agreement; provided however, the Escrow Agent shall be entitled to its compensation earned prior thereto.  The Escrow Agent shall have no responsibility for the appointment of a successor escrow agent hereunder.

(f)  The Escrow Agent shall have no obligation to take any legal action in connection with this Agreement or its enforcement, or to appear in, prosecute or defend any action or legal proceeding which would or might involve the Escrow Agent in any cost, expense, loss or liability unless security and indemnity satisfactory to the Escrow Agent, shall be furnished.

6

(g)     The LP and the Subscriber Representative jointly and severally agree to indemnify the Escrow Agent, its affiliates, and each of their respective officers, directors, employees and agents and to save the Escrow Agent and each of its officers, directors, employees and agents harmless from and against any and all Claims (as hereunder defined) and Losses (as hereinafter defined) which may be incurred by the Escrow Agent or any of such officers, directors, employees or agents as a result of Claims asserted against Escrow Agent or any of such officers, directors, employees or agents directly or indirectly as a result of or in connection with Escrow Agent's serving in the capacity of escrow agent under this Agreement. For the purposes hereof, the term "Claims" shall mean all claims, lawsuits, causes of action or other legal actions and proceedings of whatever nature brought against (whether by way of direct action, counterclaim, cross action or interpleader) the Escrow Agent or any such officer, director, employee or agent, even if groundless, false or fraudulent, so long as the claim, lawsuit, cause of action or other legal action or proceeding is alleged or determined, directly or indirectly, to arise out of, result from, relate to or be based upon, in whole or in part: (a) the acts or omissions of the LP, or (b) the appointment of the Escrow Agent as escrow agent under this Agreement, or (c) the performance by the Escrow Agent of its powers and duties under this Agreement. The term "Losses" shall mean all losses, costs, damages, expenses, judgments and liabilities of whatever nature (including but not limited to attorneys', accountants' and other professionals' fees, litigation and court costs and expenses and amounts paid in settlement), directly or indirectly resulting from, arising out of or relating to one or more Claims. Upon the written request of the Escrow Agent or any such affiliate, officer, director, employee or agent (each referred to hereinafter as an "Indemnified Party"), the LP and the Subscriber Representative agree to assume the investigation and defense of any Claim, including the employment of counsel acceptable to the applicable Indemnified Party and the payment of all expenses related thereto and, notwithstanding any such assumption, the Indemnified Party shall have the right, and the LP and Subscriber Representative agree to pay the costs and expense thereof, to employ separate counsel with respect to any such Claim and to participate in the investigation and defense thereof in the event that such Indemnified Party shall have been advised by legal counsel that there may be one or more legal defenses available to such Indemnified Party which are different from or additional to those available to the LP or the Subscriber Representative, or that the interests of the Escrow Agent on the one hand, and the LP or the Subscriber Representative, on the other hand, with respect to the Claim are otherwise different or divergent. The LP and the Subscriber Representative hereby agree that the indemnifications and protections afforded Escrow Agent and the other Indemnified Parties in this section shall survive the termination of this Agreement and any resignation or removal of the Escrow Agent.

(h)     The LP acknowledges that the Escrow Agent is serving as escrow agent for the limited purposes set forth herein and represents, covenants and warrants to the Escrow Agent that no statement or representation, whether oral or in writing, has been or will be made to any Subscriber to the effect that the Escrow Agent has investigated the desirability or advisability of investment in the Interests or approved, endorsed or passed upon the merits of such investment or the accuracy or sufficiency of the offering materials, or is otherwise involved in any manner with the transactions contemplated hereby, other than as Escrow Agent under this Agreement. It is further agreed that the LP shall not use or permit the use of the name "Green Bank, N.A." or any variation thereof in any sales presentation, placement or Private Placement Memorandum or literature pertaining directly or indirectly to the offering except strictly in the context of the duties of the Escrow Agent as escrow agent under this Agreement. Any breach or violation of the paragraph shall be grounds for immediate termination of this Agreement by the Escrow Agent.

(i)     The Escrow Agent shall have no duty or responsibility for determining whether the Interests or the offer and sale thereof conform to the requirements of applicable Federal or state securities laws, including but not limited to the Securities Act of 1933 or the Securities Exchange Act of 1934.  The LP represents and warrants to the Escrow Agent that the Interests and the Offering will comply in all respects with applicable Federal and state securities laws and further represents and warrants that the LP has obtained and acted upon the advice of legal counsel with respect to such compliance with applicable Federal and state securities laws. The LP acknowledges that the Escrow Agent has not participated in the preparation or review of any sales or offering material relating to the Offering or the Interests, and that the Escrow Agent shall have no responsibility for determining the accuracy or sufficiency of such sales or offering material or the compliance of such material with applicable state and federal securities laws, including without limitation the Private Placement Memorandum and the Subscription Agreement.   In addition to any other indemnities provided for in this Agreement, the LP agrees to indemnify and hold harmless the Escrow Agent and each of its officers, directors, agents and employees from and against all claims, liabilities, losses and damages (including attorneys' fees) incurred by the Escrow Agent or such persons and which directly or indirectly result from any violation or alleged violation of any Federal or state securities laws.

7.     <u>Notices.</u>

Any notices, elections, demands, requests and responses thereto permitted or required to be given under this Agreement shall be in writing, signed by or on behalf of the Party giving the same, and addressed to the other Party at the address of such other party set forth below or at such other address as such other Party may designate in writing in accordance herewith.  Any such notice, election, demand, request or response shall be addressed as follows and shall be deemed to have been delivered upon receipt by the addressee thereof:

      (a)     If to the LP:

RG Opportunities I, L.P.
c/o RG MGMT, LLC, General Partner
11285 Grooms Road
Cincinnati, OH 45242
Attn: Gary Chan
Phone: (513) 258-2216
Fax: (513) 258-0871
Email: gary.chan@jardinhill.com

      (b)     If to the Subscriber Representative:

New City Advisors LLC
1999 S. Bascom Ave., Suite 700
Campbell, CA 95008
Attn: Lili Wang
Phone: (310) 598-3396
Email: lwang@newcityadvisors.com

      (c)     If to the Escrow Administrator:

8

NESF Escrow Services Corp.
50 W. San Fernando Street
Suite 300
San Jose, CA 95113
Attn: Kelly E. Alton, General Counsel
Phone: 800-339-1031
Fax: 866-704-1031
Email: kalton@nesf.com

(d)      If to the Escrow Agent:

Green Bank, N.A.
2900 North Loop West, Suite 200
Houston, TX 77092
Attn: Franklin Patterson, Jr., EVP/COO
Phone: (713) 275-8221
Email: fpatterson@greenbank.com

8.      <u>Successors and Assigns: Amendment.</u>

The rights created by this Agreement shall inure to the benefit of and the obligations created hereby shall be binding upon the successors and permitted assigns of the Parties hereto, and on any other person, association, or entity which may hereafter acquire or succeed to all or substantially all of the business or assets of the Escrow Agent by any means whether direct or indirect, by purchase, merger, consolidation, or otherwise, without any need for consent by any other Party hereto. This Agreement may not be assigned by any Party other than the Escrow Agent without the express written consent of the Escrow Agent, and any attempted assignment in contravention of such prohibition shall be null and void. This Agreement may not be amended without the written consent of all Parties in writing.

9.      <u>Construction.</u>

This Agreement shall be construed and enforced according to the laws of the State of Texas (without regard to principles of conflicts of law) and applicable laws of the United States of America.

10.      <u>Counterparts.</u>

This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument. Delivery of executed signature pages by facsimile or electronic transmission will constitute effective and binding execution and delivery of this Agreement and have the same effect as the delivery of an original executed counterpart. This Agreement shall become effective when executed by the Escrow Agent.

11.      <u>Term.</u>

This Agreement shall terminate and the Escrow Agent shall be discharged of all responsibilities hereunder at such time as the Escrow Agent shall have disbursed all Subscription Proceeds in accordance with the provisions of this Agreement; provided, however, that the provisions of Sections 6(g) and 6(i) hereof shall survive any termination of this Agreement and any resignation or removal of the Escrow Agent.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF,** the Parties hereto have executed this Agreement, through their duly authorized representatives as set forth on each Party's Incumbency Certificate attached as Exhibit A hereto, on the day and year first above written.

"LP"

RG Opportunities I, L.P.

By: _____
Name: Gary Chan
Title: Authorized Signatory


"SUBSCRIBER REPRESENTATIVE"

New City Advisors LLC

By: _____
Name:
Title:

Jardin Hill, LLC, an Ohio limited liability company (the "Guarantor") hereby acknowledges and consents to the terms of this Agreement and agrees to be bound by the provisions hereof, including without limitation, the Payment Guaranty provided in Section 1(c).

Jardin Hill, LLC

By: _____
Name: Gary Chan
Title: Principal


"ESCROW ADMINISTRATOR"

NESF Escrow Services Corp.

By: _____
Name: Dan Yoder
Title: President


"ESCROW AGENT"

11

Green Bank, N.A.

By: _____

Name: _____

Title: _____

FRANKLIN Patterson Jr
EVP/COO

12

## EXHIBIT A - 1

### Certificate of Incumbency
(List of Authorized Representatives)


Client Name:  RG Opportunities I, L.P.

As an Authorized Officer of the above referenced entity, I hereby certify that each person listed
below is an authorized signor for such entity, and that the title and signature appearing beside
each name is true and correct.

| **Name** | **Title** | **Signature** | **Contact Number** |
|---|---|---|---|
| Gary Chan | Authorized Signatory | | (513) 258-2216 |
| Terry Chan | Authorized Signatory | | (513) 258-2216 |
| Jacquelyn Chan | Authorized Signatory | | (513) 258-2216 |
| | | | |
| | | | |
| | | | |


IN WITNESS WHEREOF, this certificate has been executed by a duly authorized officer by:


By: _____         Date 9/14/2016 _____
Title: Authorized Signatory

# EXHIBIT A - 2

## Certificate of Incumbency
(List of Authorized Representatives)

Client Name:  New City Advisors LLC

As an Authorized Officer of the above referenced entity, I hereby certify that each person listed below is an authorized signor for such entity, and that the title and signature appearing beside each name is true and correct.

| Name | Title | Signature | Contact Number |
|------|-------|-----------|----------------|
| Lili Wang | Managing Partner | | 310-971-9621 |
| | | | |
| | | | |
| | | | |
| | | | |

IN WITNESS WHEREOF, this certificate has been executed by a duly authorized officer by:

By:_____          Date_____

Title: _____

# EXHIBIT B

## Schedule of Escrow Agent Fees

**$2,000 Annual Escrow Agent Fee**